Good morning, judges. Good morning. If it may please the Court, my name is Harold Cassidy. I will be arguing the case on behalf of the plaintiff, Appellant Melissa Cook. If I may, could I reserve four minutes for rebuttal? Certainly. Thank you. Let me give a little context. Keep your own time. Keep track of it. I shall. So may I give a little context to this? This is an abstention case. The plaintiff filed her complaint in the state court on January 4, 2016. She filed it in the Superior Court. They threw it out of court three days later. No reason was given. Only a direction that she file something if she wants to be heard in the family court. On the 6th, two days later, the plaintiff in this case, Petitioner Siem, filed what was an uncontested complaint alleging that somehow the plaintiff here, Melissa Cook, wanted her rights terminated, which was incorrect. The plaintiff ---- Well, didn't the Searcy agreements indicate that if the requirements of State law were followed, then that would lead to her not having any parental rights? Yes. Isn't that part of what the State law provides? Yes, that's what the statute says. And that constitutional claim was raised in the court below, wasn't it? The entire case is only about the constitutionality of 7962 and related statutes. It's about, at this point, nothing else, always was. Those claims were pled and dismissed in the state court. Then what Melissa Cook was left to do was she filed a complaint in the federal court on February 2. Virtually it was simultaneous. And the day before, February 1, it was essentially simultaneous. She filed the counterclaim in the state court. What the state court judge did was we understood the construction of the statute, but she affirmed our construction of it. One, she said that the best interest of children is totally and completely irrelevant. Two, she said that the definition of what constitutes an intended parent under the California law, that makes him a sole parent, is just what was in the contract. And even his expressions later saying, I can't raise the children, I don't want to raise the children, that that didn't change his status. Let me ask you something. If he is not able to be a parent, if he's still in Georgia, if he has the triplets, isn't that a matter of Georgia state law at this point for them, for Georgia to say? I agree with Your Honor that if this district court did what it was supposed to do, ruled substantively on the constitutional issues, declared the statute unconstitutional, of course, yes, one of the points. Even whether or not the statute is constitutional, at this point, based on this record, I can only assume that, let's see, what are we calling him, CM? CM. CM has the custody of the triplets, and if he cannot take care of them properly, wouldn't that be up to the state family courts and state system to handle? Melissa Cook is here vindicating the rights of the children, and she is standing to do that both in her capacity as guardian and also as mother, and her own rights, and establishing her own rights. Only if the statute is unconstitutional, which the California Supreme Court held it is. Which court did? California Supreme Court said that it was constitutional. Your Honor, with all due respect, the court of appeals said no such thing. I thought I read that. It rejected all of your constitutional claims. It didn't address them. It certainly did. What they did, if I might, Your Honor, if I might. Just a minute. Let's look at the court of appeals' decision, whether it did or did not address your constitutional claims. Do you have the court of appeals' decision? I am intimately familiar with it, Your Honor. I can direct Your Honor to footnote 14, which summarizes the whole decision. No, I'm not talking about footnote 14. I wrote the page. I know that it purports, Your Honor, to claim to have decided it. Just a minute. Let's find the part where it says the constitutional argument. I wrote down the page. I think it's 1203. May I respond? Or 303. 363 or 1203, depending on what version. May, with the Court's permission, may I respond? Yes. All right. Go ahead while I find it. Judge, what the court of appeals did is they said they really didn't decide the substance of the constitutional issues and certainly didn't have a hearing on it. What they did is they relied on a State court case only, exclusively, Johnson v. Calvert, decided 23 years earlier, in which the California court only talked about the public policy of the State of California. We know what the public policy of the State of California is and it was embodied in that statute that was passed in 2012. That's not the issue. We know what the policy is. We know that the statute accurately reflects that policy. But the one case they pointed to never addressed the constitutional issues. The constitutional issues were not raised in that case. There isn't a single word about the children's constitutional rights raised in Johnson v. Calvert, nor were the rights of the mother in this case raised in Johnson v. Calvert. The only issue that even purported to be a constitutional claim that was made in that case was that, unique to the facts of that case, there were two legal mothers. And the Court decided what was alleged to be a constitutional issue on the basis of State law, the Court having said we're going to pick between these two. They're both legal mothers. We're going to pick between them. Glana v. Levy, the United States Supreme Court says it's not the legal lines, it's the actual facts that control. That's not the facts here. So there was they didn't take a moment. There's not one line there that addressed our arguments. They just simply said look at Johnson v. Calvert. And then in footnote 14, the Court of Appeals said, Johnson, our Supreme Court says this is consistent with our policy and we assume, therefore, that it's constitutional. The case didn't have the issue before it. And they didn't address a single thing here. Where is there any, by the way, they did affirm the family court's construction of the statute that it doesn't matter what happens to these children. He may want to give them away. He may not want them. He may not be able to care for them. They assume that it's irrelevant under the statute. They affirm that. We don't have a Pullman issue here. We know what the State law is. Both the family part and the Court of Appeal said no Pullman issues because it doesn't even matter. We're going to call him an intended parent. We're going to confer sole parentage on this man, even though he may say he doesn't want them. Well, whatever they said, there's an extensive discussion about the embassy's constitutional challenges fail, starting on page 165 of the record. Well, actually, what this comes down to, Judge, is two cases. Sprint, in which the Supreme Court made it clear that the district court was absolutely obligated to decide the federal constitutional issues here. Okay. You're talking about abstention now? Pardon me? That's abstention. Ready link. All right. Ready link is a preclusion case. Abstention is a different question. Ready link is a preclusion. Let's assume you're right about abstention. Right. That has nothing to do with the fact that also proceeding in the State court was a case in which you raised the constitutional issues. Now, you don't like what they said about the constitutional issues. You don't think they analyzed them properly. But the constitutional issues are resolved by this court. Your Honor, that's not our position. It's not. This is MC. We're not coming here to ask you to act as an appellate court of the California State court. We're here under ready link saying that there's no preclusive effect of what the court of appeal did because there was no actual proceedings. There was no actual litigation. We say we have all these facts. They said no hearing. We had a family court that says that we will not consider your constitutional issue. In fact, she interpreted the statute to mean, and by the way, I think that a fair reading of the court of appeals affirms this, that the construction of the statute is that you can't even challenge the constitutionality of the statute. She said I can't under this statute even look at your counterclaim. I can't hear your issue. I don't want to hear your issue, and I won't hear your issue. That under ready link is not an actual litigation of the issue. And to have some court of appeal pretend that we litigated it, this court has to really scrutinize whether in fact these children and their mother was given an actual ability to litigate those issues. Clearly it wasn't in lower court. Clearly Your Honor is asking the question, well, is the band-aid or attempted band-aid that was offered by the court of appeals sufficient to satisfy ready link? It isn't. Let me ask a different question. Do you agree or disagree that Cook had the opportunity to present her federal claims in the state proceeding, which included an appeal to the Colorado Court of Appeals and ultimately a petition to the Supreme Court? If that occurred, isn't that all that is sufficient to support preclusion? No. Why? Because we did raise the issues. And they wouldn't hear them. And they didn't decide them. You can't have a preclusion unless there was actual determination of the issues. There was no hearing. There was no trial. There was a trial court who said we won't even listen to you. And I don't know, I won't even read your counterclaim because I'm not allowed to under the statute. And the court of appeal affirmed that court and said that that's a proper interpretation of that statute and did this band-aid thing and said, which came out seven days after the oral argument, and said, look at Johnson v. Calvert. That resolves it all. Johnson v. Calvert simply resolved the state court issues. That was never a mystery. There was never a doubt as to what the state court law was. The question from beginning to end was, is it constitutional? Did it violate the children's substantive due process rights, their equal protection rights? Did it violate Melissa Cook's substantive and equal protection rights? And we got no hearing. And we had an appellate court that simply said, we're assuming it's constitutional because our Supreme Court said that this is our public policy, even though the Supreme Court never addressed the constitutional issues. How is that being heard? This means having an opportunity to be heard doesn't mean you get to file a complaint and then they throw it in the waste paper basket, and that's what happened in this case. That's not an opportunity to be heard. This is actually a very important issue, not just for this case, but for all litigants in a Federal court. If a state court refuses absolute – look at what happened here. The state court refused to do its job. We're in a Federal court simultaneously at the same time, and the Federal judge says, I know that the state court did not entertain the issues and refused to, but I'm going to assume that someday someone in the state court will address these issues. And it never happened. Judge, if you have any questions, I'll answer them. Otherwise, I'll reserve my time.  All right. May it please the Court, Robert Walmsley appeared on behalf of the father. He's been identified as CM in this case. Just for a brief and really quick observation in terms of the assertions at the court of appeal. Excuse me. May I ask a question? Have you agreed with the other counsel on the division of time? I omit at that point, yes, Your Honor. I'm going to be using five minutes, and each of my colleagues or the fellow advocates can be operating or using five minutes each. Thank you. Thank you. The court of appeal addressed at page 175 in the transcript each and every one of the constitutional arguments that were raised by the appellant that is now raised in this court as well, that was raised in the federal district court. So the contention that the court of appeal, second district court of appeal of California did not address those issues, this is flat out wrong, and it's a matter of the record. It's very simple. Secondarily, the contention that the lower court, the trial court in California didn't address any of the issues that were raised is not accurate, and the court of appeal observed that too, meaning the district, second district court of appeal. What happened is the trial court rejected, considered and rejected the claims of the appellant in the trial court. That's what the records reflect. But before we even get to that issue, before we get to that issue is the principal issue of standing that we've raised, because it's our contention that the appellant simply lacks standing. She lacks standing to advocate the positions that she's now presenting before this court. But the court of appeal also held that she does have standing to raise these issues, right? As to the state statute and the action in the state court. She was a party in the trial court, and she had an opportunity to be heard in relation to that. But that's a different standing in terms of this court, meaning the district court, I should say, the federal district court. The district court didn't decide it on standing grounds. It never addressed it. It decided it on abstention. Correct. If we think the finding on the conclusion that on abstention is wrong, what should we do? Should we send it back and let you make your standing argument or your preclusion argument? Actually, this court has the authority to discern and decide standing at this, because it can be decided to respond to. Standing is a prerequisite in terms of any action. It's jurisdictional. Pardon? You're saying it's jurisdictional. Yes, it's jurisdictional. She has to be someone that has suffered an injury, in fact, and an invasion of her rights. All right? So to get there, she has to leapfrog to the position that I am a parent, therefore my rights have been invaded. She can't do that. She can't do that for a multitude of reasons. So she doesn't even get through the very first element of standing in terms of invasion of her rights. She has no constitutional rights. The Court might make an observation that she has not cited a single Federal statute that confers a right on her in terms of being the mother. She has not cited a single constitutional provision that confers a right on her. She has not cited a single case that says that she is the mother in this case. What she resorts to, what she resorts to is historically a woman that is pregnant and gives birth to a child. Do you want to use your whole five minutes on standing? Pardon? Do you want to use your whole five minutes on standing? Yes. All right. Yes, yes. I don't want to reserve, Your Honor. Thank you. And I wasn't keeping an eye, so I have one minute left. So historically, CCRI does a historical precept, but history doesn't create rights. It essentially sets what the rights are. I mean, the standard of them. In other words, you don't become a mother because of history. The rights protected as a mother are historically protected. But the point is, and I know the earlier case, they pointed about leapfrogging, leapfrogging. That's what she's doing. She's leapfrogging to that point. This carries right on into the other issues, so I'm going to move on real quick, in terms of prudential standing. The main fact here is that the Supreme Court has repeatedly said issues of domestic relations, issues of domestic relations belong in the state courts. And why do they belong in the state courts? Because the state courts are those courts that are more appropriately equipped to deal with issues of domestic relations. They also belong in state courts because, as the Court may observe in the Federalist Papers, Madison, James Madison recognized matters of domestic relations are a product of state courts. I need to carve out my time for my colleagues. Thank you. Good morning, Your Honors. May it please the Court. Daniel Bearer for the three County of Los Angeles defendants, Harding, Gusenhauser and Logan. And I'll take up the baton for younger abstention. And I want to address a subject that Cook doesn't address in the reply brief, hasn't addressed in oral argument, and that is the way the district court's conception of the younger abstention doctrine fits comfortably within the third category of younger cases. May I just ask you, is your remaining counsel going to discuss Estapa? Is anyone discussing preclusion? I can certainly address issue preclusion. Have you had any plan among you? My plan was to address issue preclusion and younger, but since there's been discussion of issue preclusion, but not younger. Don't take too much time on younger. Your opponent spent most of his time on preclusion. So let's make sure that's covered by your side. Certainly. I'll just link together that third category of Sprint clicks into Dewey Dice and Penn Soil. This Court's decision in H.C. dealing with domestic relations clicks into Dewey Dice. This is a statute which links from contract to judgment. It's a statute that is uniquely, that deals with civil proceedings concerning orders uniquely in furtherance of the Court's authority, and so it does fit within the third category. Moving to issue preclusion. All the five elements of issue preclusion under California law in Redding-Link are met here. They weren't quite met when we filed our briefs because it wasn't final. Now the Supreme Court rejected review. The U.S. Supreme Court rejected review. Remitted or issued, it's as final as it's going to get. It's the same plaintiff asserting the same claims. The counsel argues that the Court of Appeal didn't really address the constitutional issues because it relied on a prior case, I think, Calvin, that talked about state policy as opposed to the constitutional issues. So what's your response to that? Is paragraph or is footnote 14 in the C.M. v. M.C. case, which Mr. Cassidy cited repeatedly, says that we look at Johnson v. Calvert as saying this is all part of California policy and California policy includes Federal constitutional issues, but that is not the only element of the C.M.'s analysis of the Federal constitutional issues. It goes on for some 12 pages analyzing each one of the Federal constitutional claims that Ms. Cook raises in this case and saying not just blindly following Johnson v. Calvert, but independently reviewing those issues and concluding that none of those raises a ground for throwing out 7962 as unconstitutional. So since that case, the Court of Appeal case, was not final until the middle of this litigation, if we disagree with the district court's ruling on abstention, should we send it back and let the district court determine whether or not the Court of Appeal case precludes the case filed in federal court? No, Your Honor, because in Reddilink, the court determined that the district court had erroneously abstained under Younger and said that's not the end of it, we can also look at issue preclusion. And it independently went through the issues of issue preclusion and concluded that the dismissal should be upheld based on issue preclusion. This Court can do the same thing. Unless there's further questions, I will give the rest of my time to my colleague, the State of California. Thank you. Good morning. May it please the Court. Cara Crane, Deputy Attorney General for the State Defendants. And I'd like to talk about something new, sovereign immunity. Although we agree that the federal court, the district court, did properly apply the Younger abstention doctrine here, and I'll be happy to address why we believe it was correct at the end of my short five minutes. But I'd like to start with sovereign immunity because it is unique to the State Defendants. As this Court knows... Don't spend too much time on that. Sovereign immunity law is fairly clear. But I know that's your parochial interest in representing your clients. Correct. But the important issue that your opponent argued is the estoppel issue or the preclusion issue. And whether the California Court of Appeals decision did or did not, or maybe it didn't have to, but whether it dealt with the constitutional issues. Okay, I will go ahead and address that issue first, and then I'll end with sovereign immunity. I want to hear about why you think abstention was appropriate to, your thoughts on that. Okay. So weave that in as well. I'll address that as well. And you only have four and a half minutes. Okay, great. I'm going to just talk as fast as I can. I'm really good at talking fast, so I hope you can keep up. So as to preclusion, the question, did the Court of Appeal address the constitutional claims in Cook State court action? Yes, it absolutely did. It spent 14 pages addressing each of her constitutional claims. The fact that in those 14 pages, the Court of Appeal analyzes and applies Calvert and Buzanka, that's exactly what the Court of Appeal is supposed to do. It is supposed to apply Supreme Court precedent. It is bound by Supreme Court precedent. So the fact that the Court of Appeal's decision is based on Calvert doesn't mean the Court of Appeal didn't address the merits of her claims. It absolutely did. Moving on to sovereign immunity, and then I'll end with abstention. As this Court knows, the 11th Amendment bars suits against states in federal court unless the state has unequivocally consented. Here, obviously, it's undisputed. We don't have unequivocal consent. Under the ex parte Young exception to sovereign immunity, a state official may be sued in federal court for prospective injunctive relief for alleged violations of federal law. However, there's an important exception to the ex parte Young exception, and that is the requirement as set forth in the ex parte Young opinion, that that state official have some sort of a connection, some sort of a connection to enforcement of the alleged unconstitutional statute or judgment. And in this case, it's helpful to go straight to the request for relief in the federal complaint. At the very end, there's one paragraph that pertains to the state defendants, and that paragraph in the request for relief seeks four things from the state defendants. Number one, an injunction restraining them from enforcing 7962, an injunction restraining them from enforcing the family court judgment, an injunction restraining them from issuing birth certificates that list the now father, that don't list Cook as the mother, and then an injunction requiring them to issue new birth certificates that list Cook as the mother. As to the first request for relief, an injunction restraining the state defendants from enforcing 7962, neither the governor nor the director of the department of public health has any. I think all, all of those claims fall for the same reason, right? Correct. Correct. The, the, the, the harm here is the family court judgment. The only way for the, and I think the court is obviously understands is the only way for the reversal of the family court judgment. That is her harm. The governor is not in charge of enforcing the judgment. The court is. So all of the relief sought can only be obtained from the court. And finally, in terms of issuing new birth certificates, although the director of the department of public health, although the state registrar, which is connected to the department does have the authority to issue corrected birth certificates. This is something that's not in our brief under health and safety code section 102725. The state registrar can only do that once it has a certified copy of a court order, establishing a new parent. So again, we don't have that. It all goes back to the family court judgment. So I'll end with younger. And I don't know if the court had a specific question about the elements, but under the ready link case in this, which appears to be this, this court's most recent pronouncement on the younger abstention doctrine, five requirements must be met in order for it to apply, but fundamentally subject matter. Jurisdiction must first exist, which doesn't exist in this case as to the state defendants due to sovereign immunity, but assuming it did exist, I'll jump to the second requirement, which I think is what's at issue is does this case fall within one of the, the Nope. See categories of cases. Number one is this was the state court action, a criminal enforcement action. No, I mean a criminal action. No. Was it a civil enforcement action? Yes, it was the state court action filed by more was specifically filed pursuant to 79, 62 to enforce the terms of a surrogacy agreement. It was a summary judicial proceeding. It was an enforcement proceeding. Also the third category of cases, according to the ninth circuit, that a state court action must fall within in order for the federal court to And I'm just going to quote because it's a bit complicated. The state court proceeding must be of the type that involves certain orders that are uniquely in furtherance of the state court's ability to perform its judicial functions. And that's relying on the sprint case here. The state court action falls within that category because a finding that the federal court would completely up end the family court judgment that relied on 79, 62. So we're a federal court to find that that 79, 62 is unconstitutional. That would upend the current family court judgment in this case, which would therefore make it impossible for the state court to enforce its own order. So therefore, for that reason, this case does this case, the state court action does fall within one of the three categories of cases that sprint requires in order for Younger to apply. The other categories of Younger, I think, go without saying that the state court did fall within. Number one, were the state judicial proceedings ongoing at the time the federal case was filed? We all know they were. Number two, I've already addressed number two. Number three, do the state court proceedings implicate an important state interest? As my colleagues have argued, they do. It's a determination of parentage action. Family relations, domestic relations are uniquely within the jurisdiction of the state courts in our country. Number four, do the state judicial proceedings, did they allow the litigant to raise her federal challenges? Yes, they did. In this case, Cook raised a counterclaim. I think it was a 65-page counterclaim in response to Moore's 79-62 petition. She raised every single federal constitutional cause of action that she raised in the federal case in her state court counterclaim. I read the transcript last night of the hearing before the family court judge on February 8th and February 9th of 2016. She absolutely did consider constitutional challenges. She denied them. She didn't provide a written analysis of why she was denying them, but she denied them. And the court of appeal then, as we know, spent 14 pages specifically addressing each federal constitutional cause of action raised in Cook's counterclaim. The fifth requirement of Younger is that the requested relief in the federal case must have the effect of enjoining a state court proceeding. And again, as I stated earlier, the relief sought a declaration, in this case, a declaration that 79-62 is unconstitutional, would completely undermine the entire state judicial proceeding that was ongoing when the federal case was filed. And for these reasons, we would request the court to affirm the district court's dismissal of the case with prejudice. And if there are no further questions, I will go ahead and conclude here. Thank you, Jess. Thank you. Well, I've got a lot to cover. Number one, the family court did not in any way, shape or form consider any constitutional issue, never mentioned it. And in fact, the record shows that she said she never even knew it was filed, the counterclaim. She said she didn't see it. She said she didn't look at it. And then when she said that she would deny it, she said, if it exists, I deny it. Okay? So, look, just put that in context for one minute. But before I do, let me try to clarify, bring some clarity to something here. Let's assume these two parties entered into this agreement, and it was oral. It wasn't in writing, but everyone agrees, absolutely this is what was agreed. And CM goes into court and tries to enforce it. Under the statute, it's not enforceable, because it wasn't in writing. Under California law, she is the mother. Under the various statutes, she is, she doesn't have to be genetically related. Because she gave birth, she is the mother. So you have to understand this case in the context of him coming to court and using this agreement to terminate the children's rights, all of them, including the right not to be commodified, sold, given to somebody who is going to give them away, and her rights. Do you know anything about what the state of affairs is with the children? We have learned a great deal only recently. CM's sister came forward and signed an affidavit. And the contents of that affidavit were put in a supplemental brief in the United States Supreme Court. We recently filed a motion to ask this court to take judicial notice of that filing, to understand the severity of allegations of what's going on that the district court, that the family court in this case refused to look at. Your Honor, look at what happened here. File a federal court complaint, file a complaint in state court, and a state court judge says, I'm not looking at it, and I'm going to dismiss it, and I'm not going to consider it, and I'm going to enter an order, and now the federal court can't do anything about it. And did you appeal that order to the California Court of Appeals? We did. But I don't want to run, I would like to respond to what was said here. Is there a place to take that if you have new information and something's going on? Isn't there a place to take that as to the family court in Georgia or wherever the children are at this point? She's, you mean, can she in theory go into the court in Georgia and litigate this? I'm having trouble with the federal court right now that's telling me that they think we're precluded from litigating the federal district court that was filed at the same time and there was no hearing. No, I'm just saying. And if I go into the court in Georgia, I'm sorry, Judge. Never mind. No, finish. No, never mind. No, no, no, please talk. Judge, what we learned was that when the nurses from the hospital brought the children to Georgia because they didn't trust him to do it, see, well, our understanding is, I'll make it proper, that one of the nurses from the hospital, Kaiser Hospital, called the state and told the state that he's not competent. So the state, basically the state stepped in. The state came and visited but then took no action. Well, maybe everything was fine so they didn't have to. So I don't want to hear any more extra record stuff. All right. One other thing, Judge, or a couple other things, if I have the time, Your Honor. Number two, domestic relations. Atwood ended that. Atwood, the Ninth Circuit has said that the domestic relations exception only pertains to diversity cases. It doesn't pertain to cases where there's a federal constitutional issue. Put that to rest. Kaplan v. Drysdale, there's no question. Even the district court in this case held that Melissa Cook had standing to litigate the rights of the children, not just based on the fact that she was the guardian, appointed guardian, but because she had an Article III standing. And the Drysdale case, we don't have to spend a lot of time on it. I think it's on page 26, 27, 28 of our brief. Give you another minute. Very good, Judge. Thank you. Your most important point. This is not a case that involves a state trying to enforce its judgments, like the kind of case where a judgment is entered in Pennzoil, and the state is saying you can execute on this judgment. If you want to appeal, you have to post a bond. It's not like that at all. We came into this case, the case wasn't over. The cases were filed simultaneously. And as far as the state defendants are concerned, they are the people who have the administrative obligation. We're entitled to get a declaratory judgment, and we don't even have to have an injunction for this court to have the proper jurisdiction. But we do ask for an injunction to tell them that they have to change the birth certificate. At that point, Your Honor, I think that she can go into Georgia, and she can go to Georgia and say we have to ask the court to exercise this parent's patria jurisdiction. And she doesn't have to. The mother of these children does not have to wait for the State of Georgia to take action. She can go into court herself and ask them to look at what's in their best interest, and she would have standing to say I'll take the children like she offered to do. If he can't do it, well, he's having them, if they're, the situation is harmful to them. I can give them a better home. But as long as we have this order, I don't see how we have a Federal court that says we're not going to decide the constitutional issues, we're just going to accept the public policy of the State of South Dakota, I mean of California. I think that her standing would be seriously questioned. Thank you, Judge. Thank you, counsel. Thank you all very much. The case, as argued, will be submitted.
judges: Reinhardt, Wardlaw, Daniel